IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ONEYBER ARIEL HERRERA HERRERA HERNANDEZ, | § § § § § | |
| Petitioner, | § § | |
| v. | § § | 1:26-CV-929-RP |
| MIGUEL VERGARA, *in his official capacity as Field Office Director for the San Antonio Field Office, Immigration and Customs Enforcement*, et al., | § § § § § § | |
| Respondents. | § § § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Oneyber Ariel Herrera Hernandez's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on April 13, 2026. (Dkt. 1). On April 16, 2026, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause within three days as to why the petition should not be granted. (Dkt. 3). On April 21, 2026, Miguel Vergara, Todd M. Lyons, Markwayne Mullin, and Todd Blanche (collectively, "Respondents")[1] filed a timely response in opposition, (Dkt. 6), to which Petitioner replied, (Dkt. 8). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

## I. BACKGROUND

Petitioner, a thirty-year-old citizen of Nicaragua, is currently detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Pet., Dkt. 1, at 3). Petitioner entered the United States in approximately 2021 and resided in Texas prior to his detention. (*Id.* at 2). Respondents allege that when Petitioner entered the United States in 2021, he was "processed for expedited removal,

---

[1] The Response is filed only on behalf of the federal employees in this action. (Resp., Dkt. 6, at 1 n.1).

claimed credible fear, and was issued a Notice to Appear (NTA) under 8 C.F.R. § 208.30 based on his credible fear claim." (Resp., Dkt. 6, at 2). Respondents then contend that Petitioner was released on INA § 212(d)(5), 8 U.S.C. § 1182(d)(5) parole, which expired in 2022. (*Id.*). Petitioner alleges that he has "a pending Application for Asylum and Withholding before the Immigration Court." (Pet., Dkt. 1, at 3). Petitioner has a two-year-old U.S. citizen daughter. (*Id.*).

Petitioner alleges that on January 12, 2026, he was at a stop light and another car hit his vehicle. (*Id.* at 3). As a result, Petitioner claims he was taken to the Travis County jail, and after two months of being detained, he was taken into custody by U.S. Immigration and Customs Enforcement ("ICE"). (*Id.*). Respondents, however, allege that Petitioner was arrested for driving while intoxicated ("DWI") and charged in Travis County, Texas, and while the DWI charge was dismissed Petitioner was charged and ultimately convicted of obstruction of a highway. (Resp., Dkt. 6, at 3). Respondents then report Petitioner was transferred to ICE after serving his jail sentence. (*Id.*). Petitioner is now in full removal proceedings and his next hearing before the Pearsall Immigration Court is scheduled for April 28, 2026. (Pet., Dkt. 1, at 3).

Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(A)(ii). (Resp., Dkt. 6, at 2). Petitioner alleges that he is entitled to a writ because (1) the detention authority purportedly being applied to detain him does not apply; (2) his detention without legal justification and without a chance to seek redetermination of his custody status violates his rights to substantive and procedural due process guaranteed by the Fifth Amendment; (3) his detention is in violation of the Administrative Procedure Act ("APA"); and (4) he is a member of the Certified Bond Eligible Class in *Maldonado Bautista v. Noem*, 5:25-cv-1873-SSS-BFM. (Pet., Dkt. 1, at 4–7). Petitioner asks the Court to declare that his detention was an unlawful exercise of authority

to grant the writ of habeas corpus and order Respondents to release Petitioner immediately.[2] (*Id.* at 7).

## II. DISCUSSION

### A. Petitioner's Petition for Writ of Habeas Corpus

This Court previously interpreted 8 U.S.C. § 1225(b)(2) as not applying to noncitizens like Petitioner who has been residing in the country for years, as opposed to a noncitizen present in the United States who has recently arrived and is actively seeking admission. *See, e.g.*, *Guzman v. Bondi*, --- F. Supp. 3d ---, No. 1:25-CV-2055-RP, 2025 WL 3724465 (W.D. Tex. Dec. 23, 2025). This interpretation was recently rejected by a Fifth Circuit panel. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). *Buenrostro-Mendez* addressed only statutory interpretation. By contrast, it did not examine whether Petitioner's ongoing detention without access to a bond hearing violates the Constitution. *Id.*[3] As such, the Court turns to Petitioner's independent claim for release under the Due Process Clause.

Respondents attempt to distinguish this case from others frequently before Court by arguing Petitioner is actually subject to mandatory detention under 8 U.S.C. § 1225(b)(1), rather than the "catchall" provision contained in 8 U.S.C. § 1225(b)(2). (Resp., Dkt. 6, at 2). In other similar cases before the Court, Respondents assert that the Board of Immigration Appeals ("BIA") decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (2025) governs petitioners' claims and dictates that they

---

[2] The Court notes here that to the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025). Given that Respondents contend that Petitioner is subject to mandatory detention without a bond hearing, Petitioner's exhaustion of administrative remedies would be futile.

[3] Indeed, the Government's counsel stated during oral argument: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here." Oral Argument, *Buenrostro-Mendez v. Bondi,* No. 25-20496, at 44:56–45:11 (5th Cir. Feb. 3, 2026), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

are subject to mandatory detention. Here, according to Respondents, because Petitioner was initially placed in expedited removal proceedings, then transferred to full removal proceedings based on his credible fear claim, he is subject to mandatory detention pursuant to a different BIA decision, *Matter of M-S*, 27 I&N Dec. 509 (2019). (*Id.* at 1). Because Petitioner argues 8 U.S.C. § 1225(b) is unconstitutional as applied to him because it violates his due process protections, the Court "finds the fact that Petitioner is detained under Section 1225(b)(1) versus 1225(b)(2) inconsequential for purposes of its analysis because both require mandatory detention and such detention the main issue raised by Petitioner." *Chauhan v. Noem*, No. 3:25-CV-00574-DB, at 8 n.5 (W.D. Tex. Dec. 8, 2025); *see Hassen v. Noem*, No. 3:26-CV-00048-DB, 2026 WL 446506, at *2 (W.D. Tex. Feb. 9, 2026). As such, the Court proceeds with the due process analysis it has undertaken in other similar matters before it.

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Noncitizens are entitled to due process of the law under the Fifth Amendment. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025); *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Contrary to Respondents' argument, (Resp., Dkt. 6, at 3–4), "*Thuraissigiam* does not foreclose [Petitioner's] due process claims." *Ochoa v. Vergara*, --- F. Supp. 3d ---, No. 1:26-CV-266-RP, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (quoting *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025)). There are "two key points of distinction between *Thuraissigiam* and [Petitioner's] case." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025). First, unlike the petitioner in *Thuraissigiam*, Petitioner does not challenge the admission process in any way or assert a right to remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("For these reasons, an alien in respondent's position

4

has only those rights regarding *admission* that Congress has provided by statute.") (emphasis added).

Petitioner "merely seeks a chance to apply for release . . . [and] [n]othing in *Thuraissigiam* suggests

[he] lacks such a due process right." *Hernandez-Fernandez*, 2025 WL 2976923, at *8. A "second key

point of distinction is that Thuraissigiam was stopped by Border Patrol 'within twenty-five yards of

the border,' immediately detained, and never released." *Id.* By contrast, Petitioner has lived in the

United States for approximately five years prior to his detention. (Pet., Dkt. 1, at 2). For

constitutional purposes, Petitioner's time living in the United States differentiates him from the

petitioner in *Thuraissigiam* because "the Due Process Clause applies to all 'persons' within the United

States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."

*Zadvydas*, 533 U.S. at 693. "Th[is] distinction between an alien who has effected an entry into the

United States and one who has never entered runs throughout immigration law."[4] *Id.*

Because Petitioner validly makes a due process argument, the Court will address whether

Petitioner has succeeded on his procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319

(1976). "To determine whether a civil detention violates a detainee's due process rights, courts apply

the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-

CV-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private

interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such

interest through the procedures used, and the probable value, if any, of additional or substitute

procedural safeguards"; and (3) "the Government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement would

entail." *Mathews*, 424 U.S. at 335.

---

[4] *See also Mendoza v. Noem*, No. 5:26-CV-728-JKP, Dkt. 9, at *12 (W.D. Tex. Feb. 26, 2026) (quoting *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025)). ("Further, even in circumstances like those here—lacking a prior detention, release, and re-detention—noncitizens already in the country who have 'established a life here—albeit without authorization,' possess 'a strong liberty interest in their freedom from detention.'").

All three *Mathews* factors weigh in Petitioner's favor. First, "[b]ecause he spent [approximately five years] at liberty in the United States, [Petitioner] possesses a cognizable interest in his freedom from detention." *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025). Moreover, especially given that Respondents paroled Petitioner and permitted him to live in the United States for approximately a year, "they cannot revoke that liberty without an individualized determination of the need to do so." (Resp., Dkt. 6, at 2; *Hassen*, 2026 WL 446506, at *2). This interest "deserves great weight and gravity." *Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880, at *6 (W.D. Tex. Oct. 16, 2025) (citations omitted).

The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this "automatic continued deprivation of liberty for a noncitizen." *Id.* at *7. As to the third factor, "Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Id.* at *6. "In any event, if such concerns exist, they would be squarely addressed" at a bond hearing. *Lopez-Arevelo*, 801 F. Supp. 3d at 687. Regardless, the government "conducted [bond hearings] for decades until its reinterpretation of the law earlier this year," reducing any purported interest in ceasing to hold meaningful bond hearings. *Id.* (citations omitted). As such, all three factors favor Petitioner, and the Court finds that Petitioner's detention without any opportunity to challenge his detention through a bond hearing violates the Due Process Clause.

Federal district courts in Texas, including this Court, have likewise found that similar instances of detention violated a Petitioner's right to procedural due process. *See, e.g.*, *id.*; *Ochoa*, ---F. Supp. 3d ---, No. 1:26-CV-266-RP, 2026 WL 482211, at *2–4; *Vieira*, 2025 WL 2937880, at *7 ("In sum, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights.");

*Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *3 (W.D. Tex. Oct. 21, 2025) ("[T]he Court does not reach the statutory interpretation question because, assuming without finding that the Government's new interpretation is correct, [petitioner] is entitled to due process and succeeds in his as-applied challenge."); *Ortega-Aguirre v. Noem*, No. 4:25-CV-04332, 2025 WL 3684697, at *3 (S.D. Tex. Oct. 10, 2025) ("Here, the Court finds that Petitioner is likely to prevail on the merits of his due process claim because he 'has been detained since August of 2025 without any individualized assessment of flight risk or dangerousness.'"); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938, at *3 (N.D. Tex. Jan. 28, 2026) ("[T]he Court holds that denying Petitioner a bond hearing under § 1225(b)(2) deprives him of procedural due process protections under the Fifth Amendment."); *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) ("[T]he Court finds that Petitioner's detention without any notice or an individualized assessment deprives her of the constitutional right to procedural due process"); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *10 (W.D. Tex. Oct. 21, 2025) (finding "that detaining [petitioner] without any individualized assessment of his flight risk and dangerousness deprives him of his constitutional right to procedural due process," and collecting cases); *George v. Noem*, No. 3:25-CV-2935-S-BW, 2025 WL 3852946, at *4 (N.D. Tex. Dec. 19, 2025), *report and recommendation adopted*, No. 3:25-CV-02935-S-BW, 2026 WL 30829 (N.D. Tex. Jan. 5, 2026) ("[D]etaining [petitioner] without a bond hearing violates his Fifth Amendment rights.").

Federal district courts in Texas have also made this finding subsequent to the Fifth Circuit issuing its opinion in *Buenrostro-Mendez*. *See, e.g.*, *Hassen*, 2026 WL 446506, at *2 & n.1 (holding that *Buenrostro-Mendez* "does not change this case's outcome on procedural due process grounds"); *Clemente Ceballos v. Garite*, No. EP-26-CV-00312-DB, 2026 WL 446509, at *2 & n.2 (W.D. Tex. Feb. 10, 2026) (same); *Marceau v. Noem*, No. EP-26-CV-237-KC, 2026 WL 368953 (W.D. Tex. Feb. 9,

2026) ("The Court's conclusion is not changed by the Fifth Circuit's recent decision in *Buenrostro-Mendez . . . Buenrostro-Mendez* has no bearing on this Court's determination of whether [petitioner] is being detained in violation of [his] constitutional right to procedural due process."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, Dkt. 9, at *7 (W.D. Tex. Feb. 26, 2026) (holding that *Buenrostro-Mendez* "only addresses a statutory claim" and "did not address and does not preclude consideration of constitutional and other claims"). This Court agrees with the Due Process Clause analysis in the above cases, and finding a constitutional violation, it need not reach the other issues briefed by the parties.

Turning to relief, in habeas cases where the Court finds an ongoing detention unlawful, "the typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "In recent months, courts across the country have ordered the release of detainees in similar situations." *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13−14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, Dkt. 9, at *16–18 (W.D. Tex. Feb. 26, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, --- F. Supp. 3d ---, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025)) (explaining, after finding a due process violation, that release is the proper remedy rather than a bond hearing because "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out.").

The Court agrees that the appropriate remedy for unlawful detention is release and will order Petitioner's immediate release.

### III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows. All relief not granted is **DENIED**.

1. Upon receipt of this order, Respondents shall <u>immediately</u> release Petitioner from custody;

2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case;

3. As soon as is practicable, and no less than two hours before release, Respondents shall notify Petitioner's counsel by email[5] of the exact location and time of Petitioner's release;

4. Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys and set at a date agreed upon by both parties. At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

**IT IS FINALLY ORDERED** that Respondents shall provide a status report **on or before May 4, 2026**, detailing their compliance with this Order.

**SIGNED** on May 1, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[5] Margie Stephanie Lazo, lazomargie.law@gmail.com

9